# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1097
No. 20-1098

_____

CRST Expedited, Inc.

*Plaintiff - Appellant/Cross Appellee*

v.

Swift Transportation Company of Arizona, LLC

*Defendant - Appellee/Cross Appellant*
_____

Appeals from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: April 14, 2021
Filed: August 6, 2021
_____

Before LOKEN, WOLLMAN, and STRAS, Circuit Judges.
_____

LOKEN, Circuit Judge.

CRST Expedited, Inc. ("CRST"), sued Swift Transportation Company of Arizona, LLC ("Swift"), alleging Swift wrongfully recruited and hired long-haul truck drivers who were "under contract" with CRST. After dismissing CRST's claim of intentional interference with its prospective economic advantage -- CRST's future relationships with drivers who were at-will employees -- the district court held a six-

day trial on CRST's claims for intentional interference with the existing contracts and unjust enrichment under Iowa law. The jury returned a verdict in favor of CRST on both claims, awarding substantial compensatory and punitive damages. Ruling on post-verdict motions, the district court upheld the intentional interference with contracts award, vacated the unjust enrichment award because it was predicated on a theory of damages rejected in the court's summary judgment rulings, and remitted the punitive damages to $3 million. Both parties appealed. With the appeals pending, this Court decided CRST Expedited, Inc. v. TransAm Trucking, Inc., 960 F.3d 499 (8th Cir. 2020) ("TransAm"), which considered identical driver contracts and similar conduct by another CRST competitor. Because the district court's post-verdict order upholding the intentional interference verdict relied upon CRST's theory of liability that we rejected in TransAm, we reverse.

## I. Background.

CRST and Swift are competing long-haul trucking companies, an industry that suffers from a persistent shortage of drivers. Federal and state laws requiring that a new driver obtain a commercial driver's license (CDL) are a barrier to entry. To help combat the shortage, long-haul companies offer driver training programs. Martin Keppler, the general manager of CRST's training programs, estimated that 5,000 drivers go through its program annually. For each driver, CRST advances the cost of training in exchange for the driver's agreement to enter into a Driver Employment Contract ("Driver Contract"). CRST's former CEO David Rusch testified that CRST spent $25 to 35 million each year on its training program.

The Driver Contract establishes an at-will employment relationship, meaning either party can terminate the contract with or without cause at any time. However, to compensate CRST for the costs of the training it has provided, Section 4 of the Driver Contract requires the driver to perform services for CRST for a period of six to ten months (the "Term") at a reduced, apprentice-level wage rate. In addition, in

Section 5 the driver covenants that, "for a period equal to the greater of the Restrictive Term and the duration of CRST's employment of Employee, Employee will not directly or indirectly provide truck driving services to any CRST Competitor." "Restrictive Term" means "the Term including any period of the Term remaining after the termination of CRST's employment . . . with or without cause." However, Section 5 provides that "the Restrictive Term shall lapse immediately upon Employee paying in full the amount due under Section 7," which provides for "Reimbursement of Advances for [CRST's] Driver Training Program."[1]

During the period at issue, Swift recruited CDL-licensed drivers using generalized advertisements that required potential employees to initiate contact with Swift. Swift offered a uniform pay scale based on experience and offered tuition reimbursement for trained drivers who documented their training costs. During the recruiting process, drivers provided their previous employment, including training, which Swift verified. See 49 C.F.R. § 391.23. When Swift verified prior employment of a CRST driver who had not completed the Restrictive Term, CRST's tracking software automatically sent Swift a "Contract Notice" stating: "The below-named individual is currently under a contract with CRST. . . . By providing you with information pursuant to Title 49 Code of Federal Regulations, CRST is not releasing this driver from his or her contractual commitment." CRST's Vice President of Capacity Development, Jenny Abernathy, testified that CRST sent Contract Notices to competitors requesting verification for a former CRST driver long after the ten-month Term so long as the driver had not worked the full Term for CRST or paid the Section 7 reimbursement. The goal of the Contract Notice, she testified, "is that [former CRST drivers] return to CRST to fulfill their commitment."

---

[1]At trial, Rusch testified that the required pay back is $6,500, though the terms of Section 7 appear to be far more complex.

Before 2016, Swift would terminate the hiring process if another carrier sent a Contract Notice or the potential employee told Swift of a non-compete restriction. But in August 2016, to meet its hiring goals as more companies adopted non-competes, Swift began hiring qualified applicants even if a former employer sent a contract notice. Swift paid all new hires in accordance with its standard pay rates, which were higher than the reduced, apprentice-level wage rate CRST paid its contract drivers during the Term. CRST's evidence at trial showed that during the period at issue Swift hired 246 drivers still "under contract" with CRST.

CRST's Complaint pleaded causes of action under Iowa law for 1) intentional interference with prospective economic advantage, 2) intentional interference with contract, and 3) unjust enrichment. Ruling on cross-motions for summary judgment, the district court held that the drivers were terminable at-will employees subject to a non-compete:

> Because the drivers were at-will employees, [CRST's] claim that [Swift] actively recruited and hired [CRST's] drivers is best characterized as a claim for tortious interference with prospective economic advantage. The claim for interference with the restrictive covenants . . . is best characterized as a claim for tortious interference with contract.

The court rejected Swift's defense that the non-compete covenants are invalid restraints of trade under Iowa law for purposes of an interference with contract claim, consistent with our decision in TransAm, 960 F.3d at 507-08. But the court dismissed CRST's claim for tortious interference with prospective economic advantage because CRST "has produced no evidence that would permit a reasonable factfinder to determine that [Swift] was motivated, even in part, to damage [CRST]" and because "the drivers' acceptance of employment with [Swift], alone, cannot shed any light on why the drivers chose to end their employment with [CRST]," which is the operative question. The court further ruled there were material fact issues that precluded summary judgment on CRST's intentional interference with contract and

unjust enrichment claims but held that CRST could not seek disgorgement of Swift's profits as a remedy for unjust enrichment. After disposing of other issues not relevant to this appeal, the court set the case for trial.

At the conclusion of the six day trial, the district court gave the following instruction regarding CRST's interference with contract claim:

## INSTRUCTION NO. 15

For CRST to prevail on its claim that Swift intentionally interfered with contracts, CRST must prove all of the following elements by a preponderance of the evidence:

*First*, CRST had employment contracts with drivers;
The contracts CRST had with its drivers included a "noncompete" clause. An employment contract may include such a clause, allowing an employee to leave employment with a company at the employee's option, but prohibiting the employee for a period of time from engaging in employment that would compete with the former employer. The noncompete clause in each of CRST's drivers' contracts were to last for a certain period of time, unless a driver repaid CRST for his training costs.
*Second*, Swift knew of the employment contracts between CRST and the drivers at issue in this case, or had knowledge of facts which, if followed by reasonable inquiry, would have led Swift to know of the contracts;
*Third*, Swift intentionally and improperly interfered with the contracts;
*Fourth*, Swift's conduct caused the drivers not to perform their contracts;
*Fifth*, Swift's conduct resulted in damage to CRST.

-5-

If CRST fails to prove any one or more of these elements, Swift is not liable to CRST for damages. If CRST proves all of these elements, Swift is liable to CRST for damages.

A person's interference with a contract is intentional if the person either interferes with the contract on purpose or knows the conduct is substantially certain to interfere with the contract.

In determining whether Swift's conduct was improper, you should determine whether the conduct was fair and reasonable under the circumstances.

A contract involves established interests that are not subject to interference on the basis of competition alone. In determining whether Swift's conduct was improper, you may consider:

(1) the nature of Swift's conduct;

(2) Swift's motive;

(3) CRST's interests that Swift's conduct interfered with;

(4) social interests in protecting CRST's contracts and Swift's freedom of action;

(5) the nearness or remoteness of Swift's conduct to the interference;

(6) the relationships between the parties; and

(7) the interest sought to be advanced by Swift.

In closing argument, counsel argued that CRST had proved that "Swift's conduct caused the drivers not to perform their contracts":

[The drivers'] contract has a noncompete for the period of time in which they are still committed to CRST or until the time they have paid. Well, what did Swift do? *It offered them employment that caused the breach of that noncompete. The noncompete isn't breached until Swift extends the offer and the employee takes that offer.* It requires Swift's affirmative action to do that, "I'm going to hire you knowing you have a noncompete."

-6-

(Emphasis added.)  Regarding proof that Swift's interference was improper, counsel pointed to Instruction No. 15 and argued, "if the reason you are interfering with a contract is just to compete in the marketplace, that's not good enough.  That's not a reason to do it.  Exhibit 41 makes clear that's the only reason that Swift did this . . . . They were looking to solve their internal needs."  "Is it just or unjust for Swift to wait until CRST has trained someone, hire that person, and use their services?"

The jury returned a verdict in favor of CRST on both claims, awarding CRST $3 million on the interference with contract claim, $7.5 million in restitution for unjust enrichment, and $5 million in punitive damages.  Swift timely renewed its motion for judgment as a matter of law, including requests for a new trial and a remittitur.  In upholding the intentional interference with contract award, the district court first concluded that CRST Contract Notices gave Swift "notice the driver was still under contract with plaintiff."  Regarding whether Swift's interference was improper and caused drivers not to perform their contracts, the court reasoned:

> First, a jury could reasonably conclude the nature of defendant's conduct was to hire plaintiff's drivers to increase defendant's profits.
>
> Second, a jury could reasonably infer defendant's motive was to engage in competition by hiring drivers who had non-competes. . . . [D]efendant researched what plaintiff paid its drivers, and then offered to pay a higher rate.
>
> \*     \*     \*     \*     \*
>
> [W]hen viewed in light most favorable to the verdict, *a reasonable jury could conclude* that the plaintiff's interest in the training program was significant, *that defendant's motive in recruiting drivers was to compete with plaintiff and increase the number of drivers it employed*, and that defendant's conduct was not remote.  *A jury could reasonably conclude this amounted to improper conduct.*
>
> \*     \*     \*     \*     \*

The testimony provided by Abernathy could indicate to a reasonable jury that the drivers were under existing contracts when they were hired by defendant. . . . *Because a jury could infer the drivers had not repaid the training costs, the jury could conclude that defendant caused the drivers to breach their contracts by offering them employment opportunities at a different company.*

(Emphasis added.)

## II. Intentional Interference with Contracts.

"To establish a claim for intentional interference with an existing contract, the plaintiff must show: '(1) plaintiff had a contract with a third-party; (2) defendant knew of the contract; (3) defendant intentionally and improperly interfered with the contract; (4) the interference caused the third-party not to perform, or made performance more burdensome or expensive; and (5) damage to the plaintiff resulted.'" Green v. Racing Ass'n of Cent. Iowa, 713 N.W.2d 234, 243 (Iowa 2006). These elements are consistent with Restatement (Second) of Torts § 766. To be actionable, interference must be both intentional and improper. Factors to be considered in determining whether interference is improper are set forth in Restatement (2d) of Torts § 767. "The issue in each case is whether the interference is improper or not under the circumstances; whether . . . the conduct should be permitted without liability, despite its effect of harm to another." Id. cmt. *b.* The Supreme Court of Iowa has consistently applied pertinent sections of the Restatement (Second) of Torts in analyzing intentional interference claims. See TransAm, 960 F.3d at 504, citing Kern v. Palmer Coll. of Chiropractic, 757 N.W.2d 651, 662 (Iowa 2008); see Green, 713 N.W.2d at 244 (applying § 767). The district court's Instruction No. 15 was consistent with these Iowa authorities.

As the district court recognized in dismissing CRST's interference with prospective advantage claim, it is not improper interference for a competitor to cause a third person "not to continue an existing contract terminable at will" if "(b) the actor does not employ wrongful means and . . . (d) his purpose is at least in part to advance his interest in competing with the other." Rest. (Second) Torts § 768(1); see Fin. Mktg. Servs., Inc., v. Hawkeye Bank & Tr. of Des Moines, 588 N.W.2d 450, 458-60 (Iowa 1999). But if the at-will contract includes a noncompete covenant, then a different rule may apply: "Under these circumstances a defendant engaged in the same business might induce the employee to quit his job, but he would not be justified in engaging the employee to work for him in an activity that would mean violation of the contract not to compete." Rest. (2d) of Torts § 768 cmt. *i*; see § 767 cmt. *f*.[2]

CRST relied on this distinction to prove its interference with contract claim. Its theory, as reflected in the above-quoted excerpts from counsel's closing argument, was the same theory CRST pursued in the TransAm case -- Swift's offer of employment caused the breach of the Contract Driver's non-compete, and "interfering with a contract . . . just to compete in the marketplace" is intentional and improper interference. However, on appeal in TransAm, this theory met with only partial success. The district court had granted summary judgment dismissing CRST's interference with contract claim because CRST presented no evidence that would satisfy the causation element of the claim. We reversed that decision because "CRST presented substantial evidence from which a reasonable juror could conclude that TransAm entered into agreements with the drivers not only with the knowledge that

_____

[2]We have found no Iowa appellate court decision applying these Restatement Comments, but the TransAm panel noted Iowa courts apply the Restatement in intentional interference cases and applied § 768 cmt. *i*. 960 F.3d at 504-05. We are bound by that reasonable interpretation of Iowa law. Cf. RTL Distrib., Inc. v. Double S Batteries, Inc., 545 N.W.2d 587, 591 (Iowa Ct. App. 1996) (applying § 768).

the drivers were under contract with CRST, and thus could not perform both contracts, but also with knowledge that its driver agreements provided for a higher rate of pay than provided for under the CRST-driver contracts." 960 F.3d at 504. That is CRST's theory in this case. But we "reject[ed] CRST's contention that any prospective employer offering terms it knows are better than an employee's fixed-term contract with his present employer commits tortious interference with that contract." Id. at 505. After quoting § 768 Comment *i* we concluded:

> the intentional interference with a contract inquiry asks not merely whether TransAm induced the drivers to work for it by offering superior terms. Instead, the inquiry is more properly framed as whether TransAm intentionally induced the drivers to work for TransAm . . . in an activity that would mean violation by the drivers of the non-compete provision, and thus intentionally and improperly interfered with the CRST contract.

Id. at 506. In other words, the proper focus is on intentionally and improperly causing the employee to violate his or her covenant not to compete, not merely on the hiring of a competitor's at-will employee to further the actor's legitimate competitive interests. We remanded in TransAm for trial of this issue.

The district court's reasoning in denying Swift's motion for judgment as a matter of law on the intentional interference with contract claim tracked CRST's rejected theory of what it needed to prove to establish the claim. The district court denied Swift's post verdict motion solely because Swift's motive in hiring the 246 Contract Drivers was to engage in competition by hiring drivers who had non-competes by offering them a higher pay rate. This reasoning is contrary to our supervening decision in TransAm, which our panel is bound to follow. Therefore, we must reverse.

The more complex question is whether to reverse with instructions to enter judgment in favor of Swift or simply remand. See Neely v. Martin K. Eby Const. Co., 386 U.S. 317, 325-29 (1967). In TransAm, we reversed the grant of summary judgment and remanded. Here, we have a full trial record in which CRST prevailed, pursuing a theory it should have known was unsound from the plain meaning of the Driver Contract and the pertinent Restatement sections and comments. In reviewing the district court's denial of judgment as a matter of law *de novo*, we view the facts in the light most favorable to the verdict, including facts necessary to the issues on appeal. See White Commc'ns, LLC v. Synergies3 Tec Servs., LLC, --- F.4th ---, ---, 2021 WL 2816234 at *4 (8th Cir. July 7, 2021); see also Fed. R. Civ. P. 50. After careful review of the record, we conclude we must reverse with instructions to dismiss because, for multiple reasons, CRST failed to prove its interference with contract claim and therefore its claim for unjust enrichment as well.

First, CRST contended, and the jury and the district court obviously agreed, that Swift caused the drivers to breach their covenants not to compete when it *offered them employment*. That assertion is contrary to the plain meaning of the covenant not to compete at issue. In Section 5.b, the contract driver did not promise not to be *hired* by Swift. He or she promised not to "provide truck driving services to any CRST Competitor." Thus, it was only *driving* for Swift before the covenant expired, not going to work for Swift, that would violate the contract. Section 5.b further provided that, if the driver accepted employment with Swift and then paid off his or her training reimbursement obligation to CRST, "the Restrictive Term shall lapse immediately." Though CRST introduced evidence that *Swift* did not pay this obligation or reimburse a contract driver who paid it, its evidence did not address whether any of the 246 contract drivers reimbursed CRST after being hired by Swift but before "provid[ing] truck driving services." We disagree with the district court that this was simply a causation issue that a reasonable jury could infer from this blank record. Proof that each driver failed to perform his covenant not to compete

-11-

was an essential element of the interference with contract claim. The question needed to be addressed individually for each driver. Absent that evidence, CRST failed to prove any breach of the Driver Contract, because an at-will employee has the right to accept employment by a competitor at any time.

Second, as we have explained, offering employment to a competitor's at-will employee is not actionable interference with contract. It is only intentional interference with a binding non-compete provision that is actionable under TransAm. The district court held there was sufficient evidence that Swift's intentional conduct was improper because the "jury could reasonably conclude the nature of [Swift's] conduct was to hire [CRST] drivers to increase [Swift's] profits." But absent a covenant not to compete, Iowa courts "view interference claims involving at-will employment contracts similar to claims involving the interference with a prospective [advantage]." RTL Distrib., 545 N.W.2d at 591. Thus, actions "undertaken to advance [Swift's] own economic interests" are not, without more, improper. Fin. Mktg. Servs., 588 N.W.2d at 459. Motive is the critical impropriety inquiry. See Nesler v. Fisher & Co., Inc., 452 N.W.2d 191, 197-98 (Iowa 1990). "[C]onduct is generally not improper if it was merely a consequence of actions taken for a purpose other than to interfere with a contract." Green, 713 N.W.2d at 244 (citations omitted); see Toney v. Casey's Gen. Stores, Inc., 460 N.W.2d 849, 853 (Iowa 1990); Rest. (2d) of Torts § 767 cmt. d.

Under TransAm, "the inquiry is . . . whether [Swift] intentionally induced the drivers to work for [Swift] . . . in an activity that would mean violation by the drivers of the non-compete provision." 960 F.3d at 506. In this case, mere inducement to work for Swift is not incompatible with the non-compete because the driver could pay back CRST before driving for Swift. CRST needed to prove that Swift improperly caused each driver not to pay back the early termination fee while working for Swift. CRST introduced no evidence that Swift induced contract drivers not to reimburse

-12-

CRST's training costs, for example, evidence that Swift "sent a targeted communication to CRST drivers offering them a 'special' deal" if they would breach their covenants not to compete, or evidence Swift was "willing to take a financial hit to induce a breach." TransAm, 960 F.3d at 511 (Stras, J., dissenting). The majority remanded in TransAm to give CRST a chance to prove its claim. Given that chance in this case, it failed to do so.

Nor was there evidence that Swift's hiring of the drivers caused any breach of the non-compete covenants that may have occurred. This required proof that Swift's conduct was "a substantial factor in bringing about [CRST's] harm." Kendall/Hunt Pub. Co. v. Rowe, 424 N.W.2d 235, 245 (Iowa 1988). Here, Swift used its normal advertising and recruiting procedures to hire at-will employees to further its competitive interests. The drivers were free to "lapse" the Restrictive Term, before or after accepting employment with Swift, by reimbursing CRST for its training costs. There is no evidence that CRST, after sending the Contract Notices, demanded that the drivers comply by reimbursing or sued any driver for breaching the covenant not to compete. Rather, CRST threatened and sued Swift (and other competitors) for tortious interference, with the goal of inducing former at-will employees to "return to CRST to fulfill their commitment" by depriving them of alternative places to pursue their careers. Swift's act of hiring was not a substantial factor in any harm resulting to CRST from the free labor market created by its at-will Driver Contracts.

For these reasons, applying our controlling decision in TransAm, we conclude the district court erred in denying Swift's motion for judgment as a matter of law on CRST's intentional interference with contract claim. Thus, we need not consider the compensatory and punitive damage issues raised on appeal.

### III. Unjust Enrichment.

Our conclusion that CRST failed to prove its intentional interference claims is likewise fatal to its unjust enrichment claim. "The doctrine of unjust enrichment is based on the principle that a party should not be permitted to be unjustly enriched at the expense of another or receive property or benefits without paying just compensation." State ex rel. Palmer v. Unisys Corp., 637 N.W.2d. 142, 154 (Iowa 2001). The benefit Swift received was the services of drivers it employed and paid consistent with its own pay rates. CRST claims this benefit was unjustly received because the drivers were trained by CRST and were still under a non-compete contract that Swift tortiously caused the drivers not to perform.

With no proof that (i) the drivers in fact failed to perform by reimbursing CRST for its training costs, and (ii) Swift tortiously caused any driver breaches that may have occurred, all we have is a claim that an employer who lawfully employs a worker who has been trained by a prior employer is *unjustly* enriched by the benefit of the employee's services. Needless to say, CRST has no authority for that proposition, which would substantially deter worker mobility that strengthens our economy and enhances the ability of all workers to succeed. The doctrine of unjust enrichment may be imprecise, but it is founded on equitable principles that do not apply in these circumstances. As Judge Richard Arnold said in applying the Iowa law of unjust enrichment in Iconco v. Jensen Construction Co., 622 F.2d 1291, 1302 (8th Cir. 1980), "if the defendant [Swift] has a claim to the benefit superior to that of plaintiff [CRST], surely it would not be unjust for the defendant to retain the benefit." Accordingly, we affirm the district court's grant of Swift's motion for judgment as a matter of law on CRST's unjust enrichment claim. We need not decide whether the district court erred in ruling that disgorgement of Swift's profits is not an appropriate measure of damages for unjust enrichment under Iowa law.

## IV. Conclusion.

The judgment of the district court in favor of CRST on its tortious interference with contracts claim is reversed and the case is remanded with directions to enter judgment in favor of Swift. We affirm the amended judgment in favor of Swift on CRST's unjust enrichment claim.

_____